TOBIASON *v.* MACHEN, Executrix

[No. 250, September Term, 1957.]

*Decided June 2, 1958.*

The cause was argued before BRUNE, C. J., and HENDER-
SON, HAMMOND, PRESCOTT and HORNEY, JJ.

*Frank Cannizzaro, Jr.,* with whom were *Dashner & Can-
nizzaro* on the brief, for the appellant.

*Clay Jewell,* with whom were *Harold C. Vanderlain* and
*Vincent R. Dempsey* on the brief, for the appellee.

PRESCOTT, J., delivered the opinion of the Court.

The sole question involved in this appeal is the construction
of the following three paragraphs of the last will and testa-
ment of Oliver F. Machen, deceased:

> "I direct my executrix hereinafter named to pay
> all my just debts and funeral expenses, as soon after
> my death as may be conveniently done and after the
> payment of all my just debts and funeral expenses,
> I give, devise and bequeath as follows:
>
> "I give devise and bequeath to Helen L. Tobiason,
> all my right, title and interest in property now
> known as 919 DeSoto Road Baltimore, Md., abso-
> lutely.

"All the rest and residue of my estate of whatsoever kind and wheresoever situate I give, devise and bequeath to my mother, Mary Virginia Machen, absolutely."

Mr. Machen was a resident of Baltimore City; he executed his will in 1953, at which time the property devised to Helen L. Tobiason who was not related to the testator, was held by him in fee simple, unincumbered; he, thereafter, placed a mortgage upon the same, the unpaid balance due thereon at the time of his decease being $2,789.48; he was unmarried and died in March of 1957, and, at the time of his death, he owned no other property of substance excepting a leasehold interest in several lots (this latter is not certain—one or more of the lots may have been held in fee simple—the uncertainty is due to the manner in which the suit was tried, which will be mentioned later), said leasehold interest being also incumbered by a mortgage; no intimation is given in the record as to the value of the leasehold interest in the lots, or whether the lots are improved or unimproved, but the unpaid balance due upon the mortgages was, approximately, $2700.

No evidence was taken at the hearing below; the matter was submitted to the court by stipulation, which consisted of colloquy between counsel and the court. A simple and more satisfactory practice, with less likelihood of misunderstanding and omission of material facts, would have been to have had a formal stipulation or an agreed statement of facts.

The chancellor concluded that it was the intention of the testator to charge the property devised to Helen L. Tobiason with the payment of the unpaid balance of the mortgage due thereon, and that it was not exonerated by the personal estate of the testator; and he signed a decree to this effect. The appellant requests our review of this decree.

It should be noted at the outset that when Machen died, the only property he owned was one piece of real estate, devised to the appellant, and certain leasehold property (personalty), which was bequeathed to the appellee under the residuary clause of the will; so, this contest is between a devisee of an incumbered specific parcel of real estate and a

residuary legatee. We shall limit our ruling to the only question presented.

Under the common law, the real estate of a deceased person was not liable for the payment of his simple contract debts; nor for his specialty obligations, unless the heir was expressly bound. Maryland, at an early date (1785) made the real estate of a decedent liable for the payment of all his debts when the personalty is insufficient; and it makes no difference whether he leaves a will or dies intestate, or what provisions his will may contain. Code (1957) Art. 16, sec. 157. It is now well-established law in Maryland that the personal estate of a testator is the natural and primary fund for the payment of debts; and, even when the real estate is expressly charged with their payment, no resort can be made to it, until the personalty is exhausted, unless it has been exonerated by the terms of the will. *Chase v. Lockerman,* 11 Gill & J. 185; *White v. Kauffman,* 66 Md. 89, 92; *Harris v. Dodge,* 72 Md. 186, 191; *Stieff v. Millikin,* 162 Md. 245, 248; *Reno, The Maryland Order of Abatement of Legacies and Devises,* 17 Md. L. Rev. 1. See also 4 *Page, Wills* (Lifetime ed.), sec. 1486; 11 R. C. L. 162; *Atkinson, Wills* (2nd ed.), p. 764; III *American Law of Property,* sec. 14.25; Cf. *Knox v. Stamper,* 186 Md. 238, 251. This exoneration may be accomplished by the express terms of the will or by reasonable and satisfactory implication therefrom. The appellee contends that when the testator used the words "all my right, title and interest" in devising the real estate unto the appellant that he intended that she receive only his equity of redemption in the property devised, and that this phraseology manifested a clear intention on the part of the testator to transfer the property subject to the burden of the payment of the mortgage. However, we are unable to reach the same conclusion. "Very clear expressions are required in order to fasten the incumbrance on the property. Thus a devise of land 'subject to a mortgage,' or any other incumbrance, does not per se exonerate the personal property, for these terms are merely a description of the real property devised * * *." *Miller, Construction of Wills,* sec. 387. The testator is pre-

sumed to have known the law, as it existed when he made his will, and that he made his will in reference to it; that is to say, both the common law and the statutory law, including the interpretation which the latter would receive from the courts. *Miller, op. cit.,* sec. 19, p. 75. The decisions of this Court and the authorities elsewhere, cited above, make it abundantly clear that the personal estate of a testator is the primary source from which his debts are to be paid; and, if a testator has a different method in mind, he should state that method either explicitly or by reasonable implication in his will. The testator in this case certainly made no express provision that exonerated his personal estate from the payment of his debts, and we cannot discover any intention on his part to do so by implication. On the contrary, Professor Page states the inference that the testator intended that the debt shall be paid out of the general estate is especially clear when, as was done in the instant case, the testator incurs the debt and gives the mortgage after he executes the will. 4 *Page, Wills* (Lifetime ed.), sec. 1490, p. 307. As we have noted, at the time the will was executed, Machen's "right, title and interest" in 919 DeSoto Road was a fee simple interest and it was this interest which he gave, absolutely, to Helen Tobiason. Under these circumstances we think the quoted phrase cannot sustain an inference that the testator intended to depart from the usual rule and require the devisee to pay the mortgage on the devised property. We hold that it was the intention of the testator that Helen L. Tobiason receive all of the testator's right, title and interest, at the time of his death, in the property devised to her, said property to be exonerated from the burden of the mortgage placed upon it, to the extent that his personal estate can pay the same.

We are not unmindful of the fact that the doctrine of exoneration is not considered a popular one, and in some states there have been statutes enacted to narrow the scope of its application, III *American Law of Property,* sec. 14.25, pp. 670-672, *Atkinson, Wills* (2nd ed.), p. 766, 4 *Page, Wills, op. cit.,* sec. 1491, 40 Harv. L. R. 630, note; but as applied in Maryland the doctrine has become so well established, that

if it be desirable to narrow its scope, this should be done by the legislature, rather than by the judiciary.

> *Decree reversed, and the cause remanded for the entry of a decree in accordance with this opinion, the appellee to pay the costs.*